```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Joan Lee Ross, et al.,             :

     Plaintiffs,              :

    v.                          :          Case No. 2:12-cv-743

Home Depot USA Inc., et al.,       :
                                     Magistrate Judge Kemp

     Defendants.              :

## OPINION AND ORDER

Joan Lee Ross tripped and fell over an extension cord at a Home Depot store in June, 2012. She filed this action the following month seeking to recover compensatory damages on a theory of negligence and premises liability.

The case is now before the Court to consider two motions, both filed by Ms. Ross: a motion to compel discovery, and a motion to amend the complaint. For the following reasons, the Court will grant Ms. Ross relief on both motions.

### I.  The Motion to Compel

Ms. Ross's motion to compel identifies four documents or categories of documents which she asked for and either did not get, or only got some but not all of the information she wanted. They are:

    1.  Store Readiness Checklist Reports from January 1, 2012 to July 1, 2012;

    2.  General Liability Claim Worksheets prepared between June 26, 2008 and July 1, 2012;

    3.  General Liability Claim Checklist and Claim Activity Sheet concerning Ms. Ross's fall; and

    4.  the Home Depot Asset Protection Guide.

Ms. Ross's complaints about the production of these documents include the fact that they have trickled in, that Home Depot has not always honored the time frame set out in the request, and

that some have been redacted or withheld altogether due to assertions of privilege.

Home Depot takes issue, in its response, with the relevance or discoverability of any of these documents.  However, it agreed to and did produce the first and third categories of documents, leaving only the second and fourth in dispute.  It also claims to have no documents falling into the second category (General Liability Claim Worksheets prepared between June, 2008 and July, 2012) but asserts that it has already produced documents about all manner of slips, trips and falls at the store in question going back to June, 2010, even if they were not similar to what happened to Ms. Ross.  According to Home Depot, that leaves only the last document - the Asset Protection Guide - for discussion.  Ms. Ross's reply memorandum appears to agree with that conclusion, so the Court will limit its analysis to the Asset Protection Guide.

The parties' respective positions on that Guide can be summarized in this way.  The Guide itself appears to be a manual developed by Home Depot to address a large number of different topics, all related to the need for its sales associates to "follow the Company's Asset Protection Standards to ensure the safety and well-being of all associates, customers and vendors." Asset Protection Guide, Doc. 40 (which was filed under seal), at 3.  One of the topics discussed in the guide is in-store displays.  Page 56, which Home Depot has produced, addresses the use of extension cords in such displays, as do pages 86 and 88, which were also produced.  Home Depot contends that the rest of the Guide contains confidential or trade secret information and that it is irrelevant to Ms. Ross's claim.  Ms. Ross, pointing out how long it took her to get just the three pages which refer to the use of extension cords in displays, questions whether Home Depot is the best judge of what else within the Guide might be

relevant.  She wants the Guide produced, subject, of course, to the existing protective order.  Home Depot filed it under seal in order to allow the Court to review it first.

The Court notes, at the outset, that Home Depot has done nothing to bolster its claim that this document is worthy of trade secret protection.  It has not submitted any evidence about how it was compiled, how broadly or narrowly it is distributed, and what steps it takes to keep the information in it confidential.  Under these circumstances, the Court cannot give much weight to the trade secret claim.

Given the fact that this lack of support for trade secret protection limits the issue to the relevance of the non-produced pages of the Guide, the Court's preferred approach to this kind of situation is for the objecting party to produce the entire document for an attorneys' eyes only review.  That allows counsel to discuss any differences of opinion about whether certain portions of the document are relevant - a discussion made much easier by the fact that all of the attorneys are looking at the same pages of the document - and it usually narrows the issue down to a few pages about which there may be some disagreement.  Those few pages can then be submitted to the Court, the Court can hear each side's informed argument about why the information is relevant, and a decision can be made in short order.  Forcing the Court to review the entire document, much of which Ms. Ross's counsel might concede is irrelevant, and also to guess at their theories for why certain pages might relate to her claim, is a much less efficient way to approach the problem, and also one that is less likely to produce the correct result.

Having said that, the Court has quickly reviewed the document and concludes that the introductory pages (pages 2 through 4) are relevant if for no other reason than they explain the purpose of the document, including the pages already

produced, and help to put those pages in context.  Pages 16 and 17 also seem relevant.  Pages 23 and 144 may contain some relevant information, or may illustrate the absence of some types of precautions that could be relevant.  Just that quick review illustrates the fact that it is far preferable to let Ms. Ross's attorneys see the entire manual and select those pages, if any, in addition to the ones the Court has highlighted, which might fit into their theory of the case.  It seems likely that they will not be interested in the vast majority of the information in the manual, but the Court does not want to preclude them from making relevance arguments that have not occurred to the Court.  Consequently, Home Depot will be directed to produce the Guide for an attorneys' eyes only review.  That review should be completed within five business days; the parties should then confer about any additional pages which Ms. Ross's counsel think are relevant; and if that does not produce an agreement, the parties should contact the Court for a conference to resolve any remaining issues.

## II.   The Motion to Amend

The motion to amend is straightforward.  Some of the pages of the Guide which Home Depot produced seem absolutely to prohibit the use of extension cords in any displays.  Also, some of the checklists they produced do not identify the presence of this cord as a hazard even though it was present for a number of days before Ms. Ross tripped and fell.  Ms. Ross wishes to add a claim for reckless conduct.  She argues that this evidence was not produced, despite her request for it, until after the deadline for moving to amend had passed, so that her motion is timely.

Home Depot argues, however, that Ms. Ross has been in possession of similar information since before the deadline (which was December 1, 2012) passed.  In particular, Home Depot

-4-

claims the same information about extension cords was revealed in the initial disclosures it served in October, 2012.  It also asserts that any evidence in support of a claim of recklessness is "at best, ambiguous," Memorandum in Opposition, Doc. 39, at 2, and that the information from the Guide which she cites to deals with electrical hazards from the use of extension cords and not tripping hazards.  Finally, it contends that a claim founded on recklessness or wanton misconduct would not support an award of punitive damages.

   The disclosures to which Home Depot refers are not, to the Court's knowledge, part of the record, nor are they attached to Home Depot's memorandum.  On the other hand, the motion to compel sets out the time frame for the disclosure of the Guide pages and how difficult it has been for Ms. Ross to obtain them.  The Court has little difficulty in concluding that Ms. Ross has shown the required level of diligence to support a relaxation of the deadline for moving for leave to amend, and that Rule 16(b) is no barrier to her motion.  See, e.g., Deghand v. Wal-Mart Stores, 904 F.Supp. 1218, 1221 (D. Kan. 1995)( "[t]he party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines").

   Turning to the analysis required by Rule 15(a), the Court notes that Home Depot has not argued that it will be prejudiced in any concrete way by the proposed amendment.  Prejudice to the opposing party is usually the benchmark for determining whether to permit an amendment to the pleadings.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971).  Home Depot argues, however, that the evidence does not support a punitive damage claim and that it should not have to be put to the expense of either answering this complaint or having to move for summary judgment on the claim.

   Home Depot's focus on what the evidence may or may not show

-5-

is not particularly relevant to a motion seeking to amend a pleading.  Although futility of a proposed amendment is a ground on which the Court can deny leave to amend, see Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579 (6th Cir.1990), the focus of that inquiry is whether the proposed amended complaint states a claim upon which relief can be granted and not on whether the plaintiff will eventually be able to prove that claim.   See Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000)("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss"); see also Duthie v. Matria Healthcare, Inc., 254 F.R.D. 90, 96 (N.D. Ill. 2008)("matters that cannot be resolved on a motion to dismiss ... do not preclude an amendment to the complaint").

At least indirectly, Home Depot argues that the proposed claim for reckless or wanton misconduct and for punitive damages does not state a claim under Ohio law.  It cites to Preston v. Murty, 32 Ohio St.3d 334, 335 (1987) for the proposition that "actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm," and to Motorists Mutual Ins. Co. v. Said, 63 Ohio St. 3d 690, 698 (1992), for the related proposition that, following Preston, Ohio courts simply do not permit punitive damages to be awarded "on mere reckless behavior."  These appear to be accurate statements of Ohio law.  However, Ms. Ross's claim, as pleaded in her proposed amended complaint, is that "Defendant, through its employees, acted willfully, wantonly, recklessly and maliciously" and that its conduct "evidenced a conscious and outrageous disregard for the safety of others ...."  Those allegations track

the Preston standard.  Further, as Ms. Ross points out in her reply, there is case law in Ohio holding that "[p]unitive damages need not be specially pleaded or claimed" but may be recovered in any tort case "so long as the evidence presented, in accordance with plaintiff's claims, warrants their allowance."  Lambert v. Shearer, 84 Ohio App. 3d 266, 273 (Franklin Co. App. 1992).

Ultimately, it appears to the Court that the question of whether punitive damages will be an issue in this case will be a matter likely to be resolved, at least initially, through summary judgment, when the entire factual record can be presented to the Court.  That has not happened yet, and would not be appropriate in the context of a motion for leave to amend.  Because Home Depot has not presented any other argument at this point in support of its opposition to the motion, the motion will be granted.

### III.

For the reasons stated above, Ms. Ross's motion to compel (Doc. 31) is granted as follows.  Within five business days, Home Depot shall produce to Ms. Ross's counsel, for an attorneys' eyes only review, the entire Home Depot Asset Protection Guide. Counsel shall confer in good faith about what portions of that guide Home Depot will agree to produce (without, of course, conceding the ultimate relevance of those portions of the Guide). If no agreement is reached, counsel shall promptly contact the Court to schedule a conference.

The motion to amend (Doc. 34) is also granted.  An amended complaint identical in form and content to Exhibit C attached to the motion shall be filed within seven days.

/s/ Terence P. Kemp
United States Magistrate Judge