```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Joan Lee Ross, et al.,            :

      Plaintiffs,             :

   v.                             :   Case No. 2:12-cv-743

Home Depot USA Inc., et al.,      :

                                    Magistrate Judge Kemp

      Defendants.             :

## OPINION AND ORDER

This matter is before the Court on a motion for partial summary judgment filed by Home Depot, U.S.A., Inc. ("Home Depot"). (Doc. 80). The motion has been briefed fully and is now ripe for decision. For the reasons set forth below, the motion for partial summary will be granted in part and denied in part.

### I. Background

Plaintiff Joan Lee Ross tripped and fell over an extension cord at a Home Depot store in June, 2012. Plaintiffs filed this action to recover compensatory damages on a theory of negligence and premises liability. Plaintiffs also set forth a claim for loss of consortium and seek punitive damages.

On June 30, 2014, Home Depot filed a motion for partial summary judgment. (Doc. 80). In the motion, Home Depot requests that the Court grant it summary judgment as to the plaintiffs' claims for punitive damages. Home Depot also moves the Court to enforce the statutory, non-economic damage caps with respect to the injuries sustained by Ms. Ross.

In their response, plaintiffs argue that the Court should deny the motion for summary judgment as to punitive damages because genuine issues of material fact exist as to whether Home Depot acted with "conscious disregard" for the rights and safety

of Ms. Ross and others.  Alternatively, plaintiffs argue that the Court should delay ruling on this issue until trial.  Plaintiffs state that "the recent amendment to O.R.C. §2315.21, whereby punitive damages claims are bifurcated at trial, makes it unnecessary for the Court to decide the punitive damages claim by way of a dispositive motion at this time."  According to plaintiffs, Home Depot's motion is premature, as the Court "will be in a much better position to make its decision after hearing all of the evidence at trial."  Plaintiffs also argue that genuine issues of material fact exist as to whether the non-economic damage caps should apply because Ms. Ross suffered a permanent and substantial physical deformity and that this issue is more properly resolved at the time of trial.

In its reply (Doc. 92), Home Depot argues that plaintiffs have no evidence to support their claim for punitive damages.  In addition, Home Depot argues that "Mrs. Ross's successful recovery and modest scarring do not fall into the very narrow exceptions to capped non-economic damages under Ohio law."  On this basis, Home Depot urges this Court to grant its motion for partial summary judgment.

## II. Motion for Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56©, demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all

reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

### III. Discussion

The Court will first examine Home Depot's motion for summary judgment on plaintiffs' claims for punitive damages. After doing so, the Court will address whether Home Depot is entitled to the statutory, non-economic damage caps with respect to the injuries sustained by Ms. Ross.

### A. Punitive Damages

There is no dispute that under Ohio law a finding of actual malice is required for an award of punitive damages. See Rice v. CertainTeed Corp., 84 Ohio St.3d 417, 704 N.E.2d 1217, 1220 (1999). In Preston v. Murty, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1176 (1987), the Ohio Supreme Court held that:

> actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit

> of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

Id. The Ohio Supreme Court instructed that, "in the latter case, before submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm." Id. at 336. In addition, the court must determine that sufficient evidence is presented to demonstrate that "the party consciously disregarded the injured party's rights or safety." Id. Facts which may be used to demonstrate actual malice include:

> (1) The duration of the offensive conduct.
> (2) An apparent lack of concern for the rights of others.
> (3) The availability of alternative methods which would avoid damage to others.
> (4) The feasibility of such alternatives.
> (5) Knowledge of adverse consequences from that conduct.
> (6) The probability that harm will occur to others from that conduct.

Brookridge Party Center, Inc. v. Fisher Foods, Inc., 12 Ohio App.3d 130, 468 N.E.2d 63, 67 (Ohio App. 8th Dist. 1983). Entitlement to punitive damages must be shown by clear and convincing evidence. See Morgan v. New York Life Ins. Co., 559 F.3d 425, 440 (6th Cir. 2009), citing Cabe v. Lunich, 70 Ohio St.3d 598, 640 N.E.2d 159, 162 (1994).

According to plaintiffs, genuine issues of material fact exist as to whether Home Depot acted with "conscious disregard" for the rights and safety of others, including Ms. Ross. First, plaintiffs argue that the duration of the offensive conduct demonstrates conscious disregard for Mr. Ross's safety. Plaintiffs state:

> Although the specific date of the placement of the fan

>       display (and the identity of the individual employee
>       responsible) cannot be known for certain due to
>       Defendant's destruction of video surveillance evidence
>       (see Doc. #77), the deposition testimony of Shannon
>       Maxwell, Defendant's Merchandising Execution Manager,
>       suggests that the display was erected between April 9,
>       2012 and April 20, 2012.  (Maxwell Depo, p. 50).  As
>       such, Defendant quite clearly utilized the extension cord
>       for an extended period of time greatly exceeding that
>       outlined in its own policy set forth on page 57 of the
>       Asset Protection Guide: "For store-built displays,
>       extension cords must not be used as permanent wiring
>       (longer than 24 hours)."

(Doc. 89 at 5)(footnote omitted).

   Plaintiffs further argue that Home Depot's use of the extension cord to power the fan display violated other policies set forth in Home Depot's Asset Protection Guide because the displays were not permitted to be powered by an extension cord and were, instead, required to be hardwired; Home Depot failed to use a breaker and/or power strip/surge protector; Home Depot declined to measure the cord to determine if it was the appropriate length; and Home Depot failed to ensure that the display did not protrude into the aisles to prevent a trip and fall hazard.  Based upon these facts, plaintiffs argue that "it was certainly foreseeable and indeed probable that the placement of the cord and its concealment could lead to falls and potentially bodily harm."

   Plaintiffs also argue that Home Depot's "reliance on self-serving testimony suggesting a lack of prior falls or incidents cannot be used to establish that none of its employees had knowledge prior to the incident that the cord could pose a trip hazard."  Plaintiffs make this argument based on the fact that Home Depot had the ability and duty to preserve the video surveillance footage that plaintiffs requested and "which would have been used to challenge such an assertion."

   This Court examined the issue of the missing video footage

in its June 20, 2014 Opinion and Order on plaintiffs' motion for sanctions.  In that decision, the Court granted plaintiffs' motion and ruled that the jury will be given the following permissive adverse-inference instruction:

> You have heard testimony about video footage that was not produced.  The Rosses have argued that this evidence may have shown something important about this dispute.
>
> This Court has found, and you must accept as true, that the Rosses requested Home Depot to preserve video footage showing the fan display area from the time the fan display was erected until after Ms. Ross fell and was taken away by the EMS squad.  That footage existed when she asked for it, but the only footage which Home Depot kept was the footage beginning 20 minutes before the fall and ending about 50 minutes later.
>
> The Court has also found, and, again, you must accept this finding to be true, that Home Depot negligently failed to preserve this evidence - that is, it did not take reasonable steps to make sure that the footage in question was not recorded over even though it had been asked to do that.
>
> From this Court's findings, you are allowed to infer, or conclude, that the lost footage would have shown something favorable to the Rosses and unfavorable to Home Depot.
>
> I am not telling you that you have to reach that conclusion, only that you can if you think it reasonable. Whether or not you do so is solely a matter within your collective discretion based on your consideration of this instruction and all of the other evidence in the case.

As noted in the Opinion and Order, this instruction may be modified by the Court at the time of trial in order to make it consistent with evidence and argument presented.  In opposing the motion for partial summary judgment, plaintiffs argue that, "[b]ased upon the adverse inference instruction ..., the trier of fact in this matter will be free to determine, based upon Defendant's spoliation of evidence, that this footage would have

supported Plaintiffs' claims in this regard." Plaintiffs add that a member of the Jackson County Fire Department EMT squad tripped over the same extension cord when responding to the call for Ms. Ross's injuries.

Finally, plaintiffs argue that alternatives to the use of the extension cord were readily available and feasible. In particular, plaintiffs argue that Home Depot improperly secured the extension cord to the concrete floor using gray duct tape, instead of the brighter colors of duct tape that it had in its inventory, such as orange, red, and yellow. Plaintiffs contend that "aesthetic considerations took precedence over its own safety policies, leading to a hazard that caused at least two individuals (and perhaps numerous others) to trip in the area next to the fan display." Plaintiffs note that the project summary did not call for the display to be energized and that, even if were supposed to be energized, the proper way to do so would have been to use overhead outlets suspended from the ceiling. For these reasons, plaintiffs contend that summary judgment on punitive damages is inappropriate.

As noted above, it is plaintiffs' burden to prove by clear and convincing evidence that Home Depot acted with actual malice required for an award of punitive damages. While plaintiffs correctly argue that Home Depot cannot rely on the missing video footage to demonstrate its lack of knowledge, plaintiffs are also limited with respect to their use of the missing video footage and what it may imply. More specifically, plaintiffs cannot rely on the missing video footage alone to prove knowledge of the tripping hazard posed by the extension cord. The adverse inference allows the jury to draw the conclusion that the missing video footage may have shown something favorable to the Rosses and unfavorable to Home Depot, but that inference is to be drawn only based the jury's consideration of all of the other evidence

in the case.  Plaintiffs have not pointed out any other evidence obtained in discovery which suggests that Home Depot knew of the tripping hazard posed by the extension cord and that its personnel consciously disregarded it.

In arguing against summary judgment on punitive damages, plaintiffs rely primarily on the fact that Home Depot may have violated its own policies with respect to its use of the extension cord to power the fan display.  A company's failure to adhere to its own policies, however, is insufficient to demonstrate the actual malice required for punitive damages.  In <u>Bethel v. Home Depot U.S.A., Inc.</u>, 2008 WL 5119602, *5 (S.D. Cal. Dec. 4, 2008), for example, the plaintiff brought suit against Home Depot and a manufacturer, alleging that a ladder he leased from Home Depot malfunctioned, causing him to fall and suffer injury.  The plaintiff alleged that the malfunction arose from a defective design which caused a "false latching" condition.  According to the plaintiff, Home Depot knew of the false latching hazard, and it acted with "conscious disregard of the safety of consumers by marketing the product and failing to warn customers."  In examining Home Depot's motion for partial summary judgment as to punitive damages, the Court found that an employee's failure to comply with Home Depot's policy of discussing how the ladder worked and reviewing its safety features with customers did not amount conscious disregard of plaintiff's safety.  The Court made this finding based upon the fact that there was no evidence demonstrating that Home Depot knew of the ladder's defect and willfully and deliberately lent the ladder to plaintiff despite that knowledge.

Similarly, in this case, Home Depot's failure to follow its own policies with respect to the use of an extension cord to power a display does not amount conscious disregard for the safety of Ms. Ross and other customers.  As Home Depot points

-8-

out, the Asset Protection Guide and record evidence, particularly the deposition testimony of Shannon Maxwell and Timothy Wightman, make it fairly clear that Home Depot's policies relating to the appropriate use of an extension cord pertained to the extension cord as a potential fire hazard, not a potential tripping hazard. (Doc. 80 at 6-7). That Home Depot could have selected another color of duct tape, choose not to power the display at all, or powered it using overhead outlets suspended from the ceiling, does not demonstrate that Home Depot had subjective knowledge of the tripping hazard posed by its use of the extension cord and, despite that knowledge, consciously disregarded the rights and safety of Ms. Ross and others. See Preston, 32 Ohio St.3d at 335-36, 512 N.E.2d 1774. These are all fairly good arguments that Home Depot was negligent, but negligence is not enough to support a punitive damages award.

As the Supreme Court has observed, punitive damages are "quasi-criminal punishment," which are "specifically designed ... to make clear that the defendant's misconduct was especially reprehensible." Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 54 (1991). It is certainly true that Home Depot could have chosen other methods to power this display and other ways to make a tripping hazard more apparent. And the destruction of the video footage does allow an inference, even at this stage of the case, that other customers might have had some problems with the display, although there is no evidence of any actual injury. The Court is willing to assume, at this point, that both the nature of the display and the possible existence of other customers' negative encounters with the extension cord should have alerted Home Depot that a more serious accident could happen. It is a very close question as to whether that would be enough to create a conscious disregard for customer safety. But given the heightened burden of proof, it is not quite enough to get the

issue to the jury.  This ruling is interlocutory, however, and the Court does not rule out the possibility of a different result after all of the evidence comes out at trial.

### B. <u>Statutory, Non-Economic Damage Caps</u>

Ohio Revised Code §2315.18(B)(2) provides, in relevant part, that:

> in a tort action to recover damages for injury or loss to person or property ... the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty dollars or an amount that is equal to three times the economic loss, as determined by the trier of fact, of the plaintiff in that tort action to a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum of five hundred thousand dollars for each occurrence that is the basis of that tort action.

<u>Id</u>.  The exception to this limitation is set forth in Ohio Revised Code §2315.18(B)(3), which states:

> There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;
>
> (b) permanent physical function injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

<u>Id</u>.

In is motion for partial summary judgment, Home Depot admits that Ms. Ross was injured, underwent surgery, has surgical scars, and has limitations on her activities of daily living.   (Doc.

-10-

80 at 15).  Home Depot maintains, however, that Ms. Ross:

> has not suffered a permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system.  Nor has she suffered a permanent physical injury that prevents her from being able to independently care for herself and perform life-sustaining injuries.

On this basis, Home Depot urges this Court to enforce the statutory cap on non-economic damages, limiting the award of non-economic damages to three hundred fifty thousand dollars for each plaintiff, subject to a maximum five hundred thousand dollars for this incident.

Plaintiffs concede that Ms. Ross's injuries do not include the loss of the use of a limb or the loss of a bodily organ system.  (Doc. 89 at n.4).  Plaintiffs likewise concede that Ms. Ross's injury will not permanently prevent her from being able to care for herself independently or to perform life-sustaining activities.  Id.  Instead, plaintiffs argue that the jury should decide whether she has suffered a "permanent and substantial physical deformity" as provided in the statute.  Plaintiffs state that Ms. Ross "suffers from multiple 'misshapened,' 'unnatural' and 'distorted' conditions in both her left knee and shoulder" and that her treatment "has required a significant amount of hardware to be implanted into her body," facts which Home Depot does not appear to dispute.  For these reasons, plaintiffs argue that "it cannot be stated as a matter of law that Mrs. Ross has not suffered a substantial and permanent physical deformity."  Plaintiffs assert that this is a factual determination best left for the jury to decide and, consequently, summary judgment on this issue should be denied.

The cap on non-economic damages has been held to be constitutional "[s]o long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings."  Arbino v. Johnson &

Johnson et al., 116 Ohio St.3d 468, 880 N.E.2d 420 (2007). There is no specific definition in Ohio Revised Code §2315.18(B)(3)(a) for "permanent and substantial physical deformity." See Weldon v. Presley, 2011 WL 3749469, *6 (N.D. Ohio Aug. 9, 2011). If a party moves for summary judgment on the nature of a plaintiff's injury, "the court's fact-finding role is limited to the threshold determination of whether there is sufficient evidence to submit the issue of the nature of the injury to the jury." Ohle v. DJO, Inc., 2012 WL 4505846, *3-4 (N.D. Ohio Sept. 28, 2012)(rejecting defendants' argument that, "as a matter of law, internal modifications of a person's body structure and surgical scars cannot qualify as permanent and substantial physical deformities"). If the plaintiff sets forth sufficient evidence to cross that evidentiary threshold, whether the injury indeed constitutes a "permanent and substantial physical deformity" is an issue for the jury to decide. Id.; see Bransteter v. Moore, 2009 WL 152317, *2 (N.D. Ohio Jan. 21, 2009)(issue of whether perforated bowel and surgical scar qualified as "permanent and substantial physical deformity" submitted to the jury); Giebel v. Lavalley, 2013 WL 6903784, *8-11 (N.D. Ohio Dec. 31, 2013)(finding sufficient evidence in the record to create an issue of fact as to whether plaintiff has suffered a permanent functional injury under O.R.C. §2315.18(B)(3)(b)).

 The Court has reviewed the record in this case and finds that plaintiffs have provided this Court with sufficient evidence to submit the issue of the nature of the injury to the jury. Stated differently, there is sufficient evidence to create a genuine issue of material fact as to whether the injury to either Ms. Ross's left knee or shoulder has caused her to suffer a "permanent and substantial physical deformity" as provided in Ohio Revised Code §2315.18(B)(3)(a). Consequently, the motion

for partial summary judgment as to this issue will be denied without prejudice to the Court's further evaluation upon appropriate motion once plaintiffs have had the opportunity to present evidence on the nature of injury at trial.

## IV. Conclusion

For the reasons set forth above, Home Depot's motion for partial summary judgment (Doc. 80) is granted in part and denied in part.  More specifically, the motion for partial summary judgment is granted as to the issue of whether the current record would justify submitting the question of punitive damages to the jury but denied to the extent that Home Depot seeks pre-trial enforcement of the statutory cap on non-economic damages.

/s/ Terence P. Kemp
United States Magistrate Judge